UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19CR243-MOC

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | **ORDER OF FORFEITURE** |
| v. | ) | |
| | ) | |
| | ) | |
| JEREMIAH V. PITTS | ) | |

**THIS MATTER** is before the Court on the United States of America's Motion, pursuant to Fed. R. Crim. P. 32.2(b), for a Preliminary Order of Forfeiture for approximately $65,319 in U.S. Currency seized from Defendant on or about February 23, 2017 during a traffic stop in this matter ("the Currency"). (Doc. No. 97). Based on the preponderance of the evidence as set forth in the trial record, the Currency is subject to forfeiture pursuant to 18 U.S.C. § 982(a)(2)(A) as property that constitutes or is derived from proceeds that Defendant obtained directly or indirectly as a result of the mail and bank fraud schemes set forth in Counts One through Three and Five through Twelve of the Indictment (Doc. 1). In support of this ruling, the Court **FINDS AS FOLLOWS:**

## I. BACKGROUND

On August 21, 2019, a Grand Jury returned a Bill of Indictment (Doc. 1; hereafter, "Indictment") against Defendant, charging him with the following offenses:

- Mail fraud affecting a financial institution in violation of 18 U.S.C. § 1341 as set forth in Counts One through Four;

- Substantive bank fraud in violation of 18 U.S.C. § 1344 as set forth in Counts Five through Twelve; and

- Money laundering in violation of 18 U.S.C. § 1957 and 2, as set forth in Counts Thirteen and Fourteen.

1

The Indictment alleged criminal conduct spanning from in or about October 2014 through in or about February 2017. The Indictment also contained a Grand Jury finding of probable cause for forfeiture of the Currency seized during the traffic stop that ultimately led to the investigation of Pitts.

From January 10, 2022, through January 12, 2022, this Court conducted a trial. At trial, the Government introduced voluminous exhibits (Doc. 84) and numerous prosecution witnesses (Doc. 69) testified. Witnesses included, among others, representatives of banks who explained credit card "bust-out" schemes, such as Pitts' scheme, that generate crime proceeds; a LabCorp/Covance witness and an IRS witness who testified as to the minimal income earned by Pitts; and a U.S. Secret Service evidence custodian who testified about custody of the Currency and a Pennsylvania State Trooper who initially seized the Currency from Pitts' rental car during a traffic stop.

On January 12, 2022, the Jury returned verdicts of guilt (Doc. 87) on thirteen of fourteen counts, including all counts except for Count Four, against Defendant. At the end of the trial and before the Jury rendered its Verdict, Pitts waived his statutory right for the Jury to decide the issue of forfeiture of the Currency and orally consented in Court to forfeiture of the Currency. Therefore, the issue of forfeiture is appropriately before this Court on this Motion. Applying the following law to the facts here, the trial record, coupled with the other information identified herein, provides ample support for forfeiture.

## II. LEGAL CONCLUSIONS

### A.     Overview of the law authorizing forfeiture

#### 1.     Proceeds

Pursuant to Title 18, any person convicted of fraud affecting a financial institution shall forfeit proceeds obtained directly or indirectly as a result of the violation. 18 U.S.C. § 982(a)(2)(A). Courts use a nexus test to determine whether assets constitute or are derived from proceeds. United States v. Farkas, 474 Fed. Appx. 349, 359 (4th Cir. 2012) (citing Libretti v. United States, 516 U.S. 29 (1995) and United States v. Cherry, 330 F.3d 658, 669-70 (4th Cir. 2003)). Courts use the "but for" test to determine whether there is a nexus between a crime and properties that the Government contends are proceeds. Id. at 359–60. "Pursuant to this test, [assets] are considered proceeds and therefore deemed forfeitable if 'a person would not have [the assets] but for the criminal offense.'" Id. (summarizing Seventh Circuit, D.C. Circuit, Second Circuit, and Eastern District of Virginia case-law and quoting the Western District of New York). "Strict tracing from a particular criminal act to a particular asset is not required if the totality of the circumstances establish that the asset constitutes or is derived from proceeds." United States v. Guess, 2015 WL 1208882, at *2 (W.D.N.C. March 17, 2015) (citing published and unpublished cases on the topic from the Sixth Circuit and the District of Maryland).

#### 2.     Preponderance Burden of Proof

The Government's burden of proof on forfeiture is preponderance of the evidence. United States v. Cherry, 330 F.3d 658, 669 (4th Cir. 2003); United States v. Tanner, 61 F.3d 231, 233 (4th Cir. 1995). The Court's "determination may be based on evidence already in the record, including [ . . . ] any additional evidence or information submitted by the parties and accepted by the court

3

as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B); see also United States v. Farkas, 474 Fed. Appx. 349, 360 (4th Cir. 2013) (court may rely on trial record to determine forfeiture). The Government may satisfy the preponderance burden by both direct and circumstantial evidence. United States v. St. Pierre, 484 F.3d 75, 86 (1st Cir. 2007).

### B. The record supports a finding of a nexus between the funds and the fraud crimes of conviction.

Here, the Government has proven a nexus by a preponderance of the evidence. Specifically, the trial record established a methodical scheme by Pitts to fraudulently obtain credit and cash out on that fraudulently obtained credit, all while Pitts maintained minimal legitimate income. And, Pitts executed this scheme and cashed out not long before law enforcement seized the Currency from him. Thus, the nexus between the Currency and the fraud offenses is clear.

**WHEREFORE**, based on the aforementioned record whereby the Government has established, by a preponderance of the evidence, the nexus between the Currency and the mail and bank fraud counts of conviction, the Government's Motion is granted, the Currency is ordered forfeited pursuant to Fed. R. Crim. P. 32.2, and the Government is authorized to take and maintain custody of the Currency for forfeiture.

Pursuant to 21 U.S.C. § 853(n)(1), the Government shall publish notice of this order; shall provide notice of its intent to dispose of the Currency in such manner as the Attorney General may direct; and shall provide notice that any person, other than the Defendant, having or claiming a legal interest in any of the Currency must file a petition with the Court within thirty days of the final publication of notice or of receipt of actual notice, whichever is earlier. This notice shall state that the petition shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the Currency, shall be signed by the petitioner under penalty of perjury, and shall set forth the

nature and extent of the petitioner's right, title or interest in the forfeited Currency and any additional facts supporting the petitioner's claim and the relief sought. The United States may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the Currency that is the subject of this Order, as a substitute for published notice as to those persons so notified.

Upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture as to the Currency. If no third parties timely file petitions, this Order shall become final by operation of law.

For the reasons stated herein, the Government's Motion for Forfeiture (Doc. No. 97), is **GRANTED**.

**SO ORDERED.**

Signed: April 5, 2022

*[Signature]*

Max O. Cogburn Jr
United States District Judge